UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

FERNANDO NAVARRO HERNANDEZ,

    Petitioner,

      v.

WILLIAM GITTERE, *et al.*,

    Respondents.

Case No. 3:09-cv-00545-LRH-WGC

ORDER

Introduction

    This action is a petition for writ of habeas corpus by Fernando Navarro Hernandez, a Nevada prisoner sentenced to death. The case is before the Court with respect to a motion to dismiss filed by the respondents, and a related motion for evidentiary hearing filed by Hernandez. In the motion to dismiss, the respondents assert that several of the claims in Hernandez's fourth amended habeas petition are procedurally defaulted, that one of his claims is not ripe for review, and that two of his claims plainly lack merit. The Court will grant the motion to dismiss in part and deny it in part, will dismiss certain of Hernandez's claims, and will set a schedule for the respondents to file an answer. The Court will deny the motion for an evidentiary hearing.

Background

    In its opinion on Hernandez's direct appeal, the Nevada Supreme Court described the factual background of this case as follows:

> Hernandez and Donna Hernandez were married on October 6, 1991, and their daughter Ana was born in February 1996. In October 1998, the marriage ended in divorce. Ana lived with Donna, but Hernandez was permitted custody of Ana from 8 a.m. on Wednesdays until 5 p.m. on Fridays.

Francisco Landeros rented a room from Donna from late August until mid-December 1998. He and Donna were friends but did not have a romantic relationship. During that time, Hernandez left insulting messages on Donna's answering machine, calling her a whore and a fool. Landeros testified that a couple of times Hernandez threatened to kill her.

In January 1999, Donna informed the Las Vegas Metropolitan Police Department (LVMPD) of a threat. She was very upset and excited, reporting that when she went to pick her daughter up from Hernandez, he said that he would "make her life very sorry" and was going to take Ana to Mexico. Donna feared for her own safety.

In March 1999, Landeros gave Donna a ride home from work in his pickup one evening. When they got to the house, Hernandez was there in his car and drove toward them. Landeros was forced to pull to the side of the road to avoid him. Donna activated the garage door opener, and Landeros drove into the garage. As the garage door was closing, Hernandez drove under it, causing it to open again. He got out of his car and tried to hit Landeros. Landeros grabbed and held Hernandez, who pleaded to be let go so he would not get in trouble with the police. After Landeros let Hernandez get back into his car, Hernandez threatened to kill Landeros and said "you're going to die, dogs." Late that same night, Hernandez called Donna's mother three times. He threatened to kill Donna. He also said that he had money in Mexico and was going to take Ana there to raise her because Donna was an unfit mother.

Immediately after these incidents, Donna obtained a protective order against Hernandez. She later had it extended until April 13, 2000. It was therefore in effect at the time of the subject offense in October of 1999.

About two weeks before Hernandez killed Donna, he told a friend that he wanted to kill her, their daughter, and himself. He was intoxicated at the time.

Around 7 a.m. on October 6, 1999, LVMPD Officer David Swoboda was driving an unmarked police car south on Highway 95 towards Laughlin, Nevada. A car passed him going well over the speed limit. Swoboda turned on his red lights and gave chase. The car reached a speed of 96 miles per hour and traveled about eight miles before Swoboda was able to pull it over. Hernandez, who was driving the car, got out. He was crying, raised his hands, and said, "just shoot me, just kill me." He walked around the car to the passenger side and said, "I'm sorry, baby." Because of his unusual behavior, Swoboda handcuffed him and placed him in front of the police car.

Swoboda went to Hernandez's car, where Ana sat in a car seat in the back, crying. He tried to calm her and then returned to Hernandez and obtained his driver's license. He noticed that Hernandez had cuts on his face and hand and asked him what happened. Hernandez said that he had fought with his ex-wife. Swoboda learned through his police computer of Donna's protective order against Hernandez, so Swoboda suspected a domestic violence situation and requested that officers be sent to Donna's home.

LVMPD Detective Tom Allen arrived at the scene of the confrontation with Hernandez. Swoboda left Allen with Hernandez and returned to Ana. He noticed a blood stain on the seat near her. She was still crying and said, "daddy hurt mommy real bad."

Hernandez smelled of alcohol and admitted to drinking three beers. He failed a horizontal gaze nystagmus test administered by Detective Allen and was placed under arrest. Swoboda put him in his police car. Hernandez alternated between calm and almost hysterical moments. He asked to kiss Ana goodbye. Allen brought her to him, Hernandez kissed her, and Allen took her away. Hernandez began crying and said, "I killed them" and "I killed her." Swoboda advised Hernandez of his Miranda rights, and Hernandez continued to say, "I killed them" and "I killed her."

Detective Allen found some children's clothing and underwear in Hernandez's car and noticed bloodstains on the pajamas that Ana was wearing. Allen eventually took her to his vehicle where she told him that her father had hurt her mother on the stairs. Ana also told him that she and her father were going to Mexico.

Hernandez was driven to the police facility in Laughlin, and analysis of his breath showed blood alcohol levels of 0.165 and 0.154 percent. He was then driven to the Clark County Detention Center. During the drive he acted erratically, sometimes yelling and crying. At one point he tried to jump out of the moving vehicle. He stated that his life was over and asked the police officer to shoot him. After Hernandez was in the booking area at the jail, he began to hit the back of his head against the concrete wall behind the bench he was sitting on and had to be restrained. Property taken from Hernandez included, among other things, a ring from his right hand and over $1,000 in cash.

LVMPD officers went to Donna's residence, broke open the door, and found her body lying on the stairs. There was blood all over the body and the walls by the stairs, and a broken knife lay nearby. There was no sign of forced entry (other than by the police), and the home otherwise appeared undisturbed. A crime scene analyst found blood elsewhere in the house, including around the kitchen sink. The broken knife by Donna's body was a kitchen knife with a seven-and-a-half-inch serrated blade. Another analyst identified a palm print taken from the knife as Hernandez's. DNA analysis of the blood found at the crime scene showed it to be both Donna's and Hernandez's. Donna's blood was also found on Ana's pajamas and on the ring taken from Hernandez.

The autopsy showed that the cause of Donna's death was strangulation, with significant contributing conditions including multiple stab and slash wounds and blunt head trauma. Some of the bruises on Donna's neck were caused by fingers and others by an object such as a foot or knife placed against her neck. She suffered numerous contusions on her body and face and numerous defensive slash wounds on her hands. A stab wound in the area of her heart pierced her left lung, striking a rib in the back; stab wounds to each side of her neck penetrated into the area of the carotid arteries. It appeared that Hernandez was able to inflict these three major wounds to such vital areas because Donna had ceased to struggle against the attack. Finally, the autopsy revealed the tip of the handle of a dinner knife protruding from her vagina. The knife had been

thrust to the left of the cervix, perforating the vaginal wall and penetrating into the abdominal cavity. This last wound caused minimal hemorrhaging and likely occurred after Donna's death.

Hernandez presented the following evidence. In April 1999 he alleged to Child Protective Services (CPS) that Landeros was sexually molesting Ana. However, an investigation proved the allegation groundless.

The director of Ana's preschool testified that a couple of days before Donna's murder she saw Donna and Hernandez together at the preschool. She was surprised because she knew that they did not get along. She did not know whether they had driven there in the same car. The director said that Hernandez usually picked Ana up on Wednesdays, but occasionally, if Donna called first to give the preschool her approval, he picked her up on a different day.

Nelly Hernandez, a friend of Hernandez's, testified that she helped him with translations during his divorce and custody proceedings. Hernandez was upset because he still wanted to be married and have his family together. He was also upset when he filed his complaint with CPS against Landeros. After Hernandez's arrest, Nelly went to his house to gather his belongings. She did not see any blood or signs that he had been packing, and she recovered his passport and Ana's birth certificate from the house. Another friend, Juan Trillo, testified that in the month before Donna's murder, Hernandez repeatedly said that he was trying to get Donna back. Trillo saw them together in Hernandez's car a couple of times. Trillo also went with Nelly to gather Hernandez's belongings and saw no blood or indications that he had been packing. Hernandez's neighbor testified that he had seen Donna at Hernandez's house a few times in the afternoon, but he could give no dates.

The prosecution and defense stipulated that the caller ID on Donna's telephone showed that a call was received from Hernandez's phone at 9:32 p.m. on October 5, 1999.

In rebuttal, the prosecution presented videotape of family court proceedings involving Donna and Hernandez in November 1998, soon after their divorce. In the proceedings, Hernandez expressed his desire to take Ana on vacation to Mexico. Donna told the court, "He tells me all the time that I'm a bad mother, and he's going to take my child away from me. I'm afraid of him."

On July 14, 2000, the jury returned verdicts finding Hernandez guilty of burglary while in possession of a weapon, first-degree murder with use of a deadly weapon, second-degree kidnapping, and unlawful sexual penetration of a dead human body.

During the penalty phase, the State presented victim impact evidence through the testimony of Donna's mother and brother and Ana's therapist. The evidence showed that Donna's murder had severely affected her brother, sister, mother, and father, but Ana had been particularly traumatized and would likely require therapy until she was sixteen to eighteen years old. Hernandez called a number of witnesses, including his brother, an employer, and friends and fellow workers.

According to their testimony, he held multiple jobs, was hard-working, was polite and friendly, and was a loving and devoted father. Hernandez spoke in allocution.

At the end of the penalty phase, the jury found three aggravating circumstances: Hernandez subjected the victim to nonconsensual sexual penetration immediately before, during, or immediately after the commission of the murder; the murder was committed while Hernandez was engaged in the commission of a burglary; and the murder involved the torture and/or mutilation of the victim. Seven mitigating circumstances were found: Hernandez had no significant history of prior criminal activity; he committed the murder while under the influence of extreme mental or emotional disturbance; he had accepted responsibility for the crime; he had expressed remorse for the crime; he was intoxicated at the time of the crime; he had been gainfully employed throughout his adult life; and he spared the life of his daughter even though he had threatened to kill her. The jury found that the aggravating circumstances outweighed the mitigating and returned a verdict of death.

*Hernandez v. State*, 118 Nev. 513, 517-20, 50 P.3d 1100, 1103-06 (2002) (copy of opinion in record as Exh. 2, at ECF No. 14-2, pp. 9-41). The judgment of conviction was filed on September 28, 2000. *See* Judgment of Conviction, Exh. B (ECF No. 53-3).

Hernandez appealed, and the Nevada Supreme Court affirmed the judgment of conviction on August 2, 2002, and then denied rehearing on September 5, 2002. *See Hernandez*, *supra*; *see also* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Petition for Rehearing, Exh. 13 (ECF No. 16, pp. 42-50). The United States Supreme Court denied certiorari on February 24, 2003. *See* Notice of Denial of Certiorari, Exh. 243 (ECF No. 117-16).

Hernandez filed a petition for writ of habeas corpus in state court on March 12, 2003. *See* Proper Person Post-Conviction Petition for Writ of Habeas Corpus, Exh. 232 (ECF No. 117-5). After holding an evidentiary hearing, the state district court denied Hernandez's petition. *See* Findings of Fact, Conclusions of Law and Order, Exh. 3 (ECF No. 14-2, pp. 42-50). Hernandez appealed. *See* Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). The Nevada Supreme Court affirmed the denial of the petition on October 30, 2008. *See Hernandez v. State*, 124 Nev. 978, 194 P.3d 1235 (2008) (copy of opinion in record as

Exh. 4, at ECF No. 14-2, pp. 51-79). The Nevada Supreme Court denied rehearing. *See* Order Denying Rehearing, Exh. 236 (ECF No. 117-9).

Hernandez initiated this federal habeas corpus action, by filing a *pro se* habeas petition, on September 18, 2009 (ECF No. 1). The Court appointed counsel for Hernandez, and, with counsel, Hernandez filed a first amended habeas petition on December 21, 2009 (ECF No. 13).

The respondents then filed a motion to dismiss (ECF No. 52) arguing that several of the claims in the amended petition were not exhausted in state court. In response, Hernandez moved for leave to further amend his petition and for a stay of this action to allow him to return to state court to exhaust his unexhausted claims (ECF Nos. 59, 61). On May 21, 2010, the Court granted Hernandez leave to file his second amended petition and granted his motion for a stay. *See* Order filed May 21, 2010 (ECF No. 71). Hernandez's second amended habeas petition was filed on that date (ECF No. 72), and the action was stayed pending completion of Hernandez's second state habeas action.

Hernandez then initiated a second state habeas action. S*ee* Decision, Exh. 196, p. 5 (ECF No. 98, p. 6). The state district court denied relief in that action on procedural grounds. *See id.* Hernandez appealed. *See* Appellant's Opening Brief, Exh. 201 (ECF No. 98-5); Appellant's Reply Brief, Exh. 202 (ECF No. 98-6). The Nevada Supreme Court affirmed on September 24, 2014, ruling that Hernandez's second state action was untimely, and he did not show cause and prejudice to overcome the procedural bar. *See* Order of Affirmance, Exh. 203 (ECF No. 98-7). The Nevada Supreme Court denied rehearing on November 25, 2014. *See* Order Denying Rehearing, Exh. 205 (ECF No. 98-9).

The stay of this action was lifted on February 20, 2015 (ECF No. 94). Hernandez filed a third amended habeas petition on June 22, 2015 (ECF No. 97), and then a fourth amended habeas petition on March 6, 2017 (ECF No. 147), the latter of which is now the operative petition.

Hernandez's fourth amended petition asserts the following claims:

      1A.    Trial counsel were ineffective, in violation of Hernandez's federal constitutional rights, for failing to investigate, and introduce evidence at trial concerning, Hernandez's "organic brain damage, severe delusional disorder, fetal alcohol spectrum disorder and ... genetic predisposition toward alcohol-induced psychosis, which was worsened by the onset of dementia caused by his severe heart condition." Fourth Amended Petition (ECF No. 147), pp. 28-47.

      1B.    Trial counsel were ineffective, in violation of Hernandez's federal constitutional rights, "in their development and presentation of their second-degree murder defense." *Id.* at 48-58.

      1C.    Trial counsel were ineffective, in violation of Hernandez's federal constitutional rights, "for failing to move the trial court to question all of the jurors regarding any conversations concerning the purchase of the gift," a gift that some jurors purchased for the child of Hernandez and the murder victim. *Id.* at 58-59.

      1D.    Trial counsel were ineffective, in violation of Hernandez's federal constitutional rights, for "failure to object to prosecutorial misconduct." *Id.* at 59-60.

      1E.    Trial counsel were ineffective, in violation of Hernandez's federal constitutional rights, for "failing to investigate, develop and present mitigation evidence at trial." *Id.* at 60-64.

      1F.    Hernandez's federal constitutional rights were violated as a result of the cumulative effect of the ineffective assistance of his trial counsel. *Id.* at 64-66.

      2.    Hernandez's federal constitutional rights were violated because he "was deprived of expert assistance to aid in his defense during the guilt and penalty phases of his trial." *Id.* at 67-92.

      3.    Hernandez's federal constitutional rights were violated "because a biased and improperly impassioned jury determined his sentence." *Id.* at 93-97.

      4.    Hernandez's federal constitutional rights were violated "because of trial court error and ineffective assistance of counsel during voir dire." *Id.* at 98-101.

      5.    Hernandez's federal constitutional rights were violated "because neither the guilt phase jury instruction on 'murder by torture' nor the penalty phase jury instruction on torture sufficiently narrowed the class of defendants eligible for the death penalty." *Id.* at 102-07.

      6.    Hernandez's federal constitutional rights were violated "because it was legally impossible for him to kidnap his own daughter." *Id.* at 108-11.

7.     Hernandez's federal constitutional rights were violated "due to the Nevada Supreme Court's purported 're-weighing' and 're-sentencing' after invalidating an aggravating circumstance, and to its failure to properly consider the effect of the unconstitutional penalty phase jury instructions in its harmless error assessment." *Id.* at 112-14.

8.     Hernandez's federal constitutional rights were violated "due to the severe and pervasive prosecutorial misconduct throughout various parts of Mr. Hernandez's trial." *Id.* at 115-19.

9.     Hernandez's federal constitutional rights were violated "because the trial court unconstitutionally allowed the introduction of hearsay statements made by a child." *Id.* at 120-22.

10.    Hernandez's federal constitutional rights were violated "because the trial court unconstitutionally allowed the introduction of evidence of prior uncharged bad acts." *Id.* at 123-25.

11.    Hernandez's federal constitutional rights were violated "because the State failed to comply with its obligation to disclose exculpatory and/or impeachment evidence and because the trial court unconstitutionally failed to order the state to comply with the requirements of *Brady* [*v. Maryland*, 373 U.S. 83, 87 (1963)]. *Id.* at 126-30.

12.    Hernandez's federal constitutional rights were violated "because the undue influence of publicity on Mr. Hernandez's trial denied him his right to due process" and because his trial counsel was ineffective for failing to move for a change of venue. *Id.* at 131-32.

13A.   Hernandez's federal constitutional rights were violated because "[t]he malice instructions were unconstitutional." *Id.* at 133-37.

13B.   Hernandez's federal constitutional rights were violated because "[t]he felony-murder instruction was unconstitutional." *Id.* at 138.

13C.   Hernandez's federal constitutional rights were violated because "[t]he murder by torture instruction was unconstitutional." *Id.* at 138-39.

13D.   Hernandez's federal constitutional rights were violated because "[t]he instructions on voluntary manslaughter acted to reduce the State's burden of proving the elements of murder." *Id.* at 139-41.

13E.   Hernandez's federal constitutional rights were violated because "[t]he deadly weapons enhancement instruction was unconstitutionally vague." *Id.* at 141-42.

13F.   Hernandez's federal constitutional rights were violated because "[t]he voluntary intoxication instruction was unconstitutional." *Id.* at 142-43.

13G.   Hernandez's federal constitutional rights were violated because "[t]he jury penalty phase unanimity instruction was unconstitutional." *Id.* at 143-45.

13H.   Hernandez's federal constitutional rights were violated because "[t]he 'anti-sympathy' instruction was unconstitutional." *Id.* at 145-46.

13I.   Hernandez's federal constitutional rights were violated because "[t]he jury guilty phase unanimity instruction was unconstitutional." *Id.* at 146-47.

13J.   Hernandez's federal constitutional rights were violated because "[t]he 'equal and exact justice' instruction was unconstitutional." *Id.* at 147-48.

13K.   Hernandez's federal constitutional rights were violated because "[t]he instruction defining 'mutilation' was unconstitutional." *Id.* at 148-51.

13L.   Hernandez's federal constitutional rights were violated because "[t]he reasonable doubt instruction was unconstitutional." *Id.* at 151-53.

13M.   Hernandez's federal constitutional rights were violated because of the effect of the unconstitutional jury instructions, singly and cumulatively. *Id.* at 153.

14.   Hernandez's federal constitutional rights were violated because "trial counsel failed to expend or demand the expenditure of the resources necessary to provide Mr. Hernandez adequate representation, or to make a record concerning any denial of those resources." *Id.* at 154-58.

15.   Hernandez's federal constitutional rights were violated "because the introduction of inappropriate photographs into evidence deprived him of his right to a fair trial." *Id.* at 159-61.

16.   Hernandez's federal constitutional rights were violated "because the trial court unconstitutionally allowed the introduction of statements made by Mr. Hernandez in violation of his Fifth Amendment rights," and because his trial counsel was ineffective for failing to object to the introduction of those statements. *Id.* at 162-63.

17.   Hernandez's federal constitutional rights were violated "because there was insufficient evidence to support his convictions." *Id.* at 164-67.

18.   Hernandez's federal constitutional rights were violated "because the trial court failed to conduct a sufficient inquiry in response to Mr. Hernandez's motion for new counsel." *Id.* at 168-70.

19.   Hernandez's federal constitutional rights were violated because his "capital trial and sentencing and review on direct appeal were conducted before state judicial officers whose tenure in office was not during good behavior but whose tenure was dependent on popular election, and who failed to conduct fair and adequate appellate review." *Id.* at 171-79.

20. Hernandez's federal constitutional rights were violated because his "direct appellate counsel was ineffective." *Id*. at 180-81.

21. Hernandez's death sentence is invalid under the federal constitution "because execution by lethal injection violates the constitutional prohibition against cruel and unusual punishments." *Id*. at 182-208.

22. Hernandez's federal constitutional rights were violated "because he was denied the right to meaningful appellate review by the trial court's unconstitutionally holding unrecorded bench conferences." *Id*. at 209-10.

23. Hernandez's federal constitutional rights were violated "because the trial court erred by denying Mr. Hernandez's motion to argue last." *Id*. at 211-12.

24. Hernandez's federal constitutional rights were violated "because Nevada's death penalty scheme fails to narrow the number of people eligible for the death penalty." *Id*. at 213-17.

25. Hernandez's death sentence is invalid under the federal constitution "because the death penalty is unconstitutional under all circumstances." *Id*. at 218-19.

26. Hernandez's federal constitutional rights were violated "because the death penalty was constitutionally excessive under the facts of Mr. Hernandez's case." *Id*. at 220.

27. Hernandez's federal constitutional rights were violated "due to the cumulative errors in the admission of evidence and instructions, gross misconduct by state officials and witnesses, and the systematic deprivation of Mr. Hernandez's right to the effective assistance of counsel." *Id*. at 221-22.

28. Hernandez's federal constitutional rights were violated because of "the absence of a jury instruction defining the standard of proof as beyond a reasonable doubt in the weighing stage of Mr. Hernandez's penalty hearing." *Id*. at 223-24.

29. Hernandez's federal constitutional rights were violated because "[t]he Nevada Supreme Court's re-weighing and re-sentencing after striking the burglary aggravator substituted a decision of an appellate court for a decision reserved exclusively for a jury." *Id*. at 225-29.

The respondents filed a motion to dismiss Hernandez's fourth amended petition on March 5, 2018 (ECF No. 161). In their motion to dismiss, Respondents argue that several claims in Hernandez's fourth amended habeas petition are barred, in whole or in part, by the procedural default doctrine. Respondents also argue that Claim 21 is not ripe for review, and that Claims 28 and 29 are plainly without merit.

On July 3, 2018, Hernandez filed an opposition to the motion to dismiss (ECF No. 168) and a motion for evidentiary hearing (ECF No. 167). Respondents filed a reply in support of their motion to dismiss (ECF No. 173) and an opposition to the motion for evidentiary hearing (ECF No. 174) on August 9, 2018. Hernandez filed a reply in support of his motion for evidentiary hearing on August 29, 2018 (ECF No. 179).

Procedural Default

The Law Regarding Procedural Defaults

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the State's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*,

874 F.2d 599, 603 (9th Cir. 1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman v. Thompson*, 501 U.S. 722, 746-47 (1991), that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Martinez*, 566 U.S. at 15. The *Martinez* Court, however, "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 8.

The Procedural Defaults in this Case

The respondents claim that the following of Hernandez's claims are barred, in whole or in part, by the procedural default doctrine: Claims 1A, 1B, 1C, 1D, 1E, 1F, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13A, 13B, 13C, 13E, 13F, 13G, 13H, 13I, 13J, 13K, 13L, 14, 15, 16, 18, 19, 20, 24, 25, 26 and 27. *See* Motion to Dismiss (ECF No. 161), pp. 7-27.

On Hernandez's direct appeal and the appeal in his first state habeas action, the Nevada Supreme Court, for the most part, addressed his claims on their merits (the few exceptions are noted and discussed below). *See Hernandez v. State*, 118 Nev. 513, 50 P.3d 1100 (2002) (copy of opinion in record as Exh. 2, at ECF No. 14-2, pp. 9-41); *Hernandez v. State*, 124 Nev. 978, 194 P.3d 1235 (2008) (copy of opinion in record as Exh. 4, at ECF No. 14-2, pp. 51-79). Claims asserted by Hernandez on his direct appeal or on the appeal in his first state habeas action and addressed by the Nevada Supreme Court on their merits were not procedurally barred in state court and are not subject to the procedural default doctrine in this case.

On Hernandez's appeal in his second state habeas action, the Nevada Supreme Court ruled his entire petition untimely under NRS § 34.726 and ruled that he did not show cause and prejudice to overcome the procedural bar. *See* Order of Affirmance, Exh. 203 (ECF No. 98-7). Therefore, claims exhausted by Hernandez in state court only in his second state habeas action are subject to the procedural default doctrine.

<u>Adequacy of State Procedural Rules</u>

<u>NRS § 34.726 – Statute of Limitations</u>

Hernandez argues that NRS § 34.726, the state statute of limitations applied to bar his claims in his second state habeas action, was not adequate to support application of the procedural default doctrine. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 40-46.

A state procedural rule is "adequate" if it was "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (state procedural rule adequate if "firmly established and regularly followed by the time as of which it is to be applied" (citation and internal quotation marks omitted)); *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001). However, state courts' exercise of discretion in isolated cases does not necessarily render procedural rules inadequate. *See Walker v. Martin*, 562 U.S. 307, 319-21 (2011) (rule not automatically inadequate "upon a showing of seeming inconsistencies;" state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule"); *see also Beard v. Kindler*, 558 U.S. 53, 60-61 (2009) ("[A] discretionary rule can be 'firmly established' and 'regularly followed' -- even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.").

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals established a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of pleading "the existence of an independent and adequate

state procedural ground as an affirmative defense." *Bennett*, 322 F.3d at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* If the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the procedural rule rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id.*; *see also King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

The respondents meet their initial burden by asserting that NRS § 34.726 constituted an independent and adequate state procedural ground for the Nevada Supreme Court's ruling. *See* Motion to Dismiss (ECF No. 161), pp. 4-5; *see also Bennett*, 322 F.3d at 586. In response, Hernandez argues that NRS § 34.726 was inadequate. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 40-46.

The Ninth Circuit Court of Appeals has repeatedly held NRS § 34.726, the Nevada statute of limitations, to be adequate to support application of the procedural default defense. *See Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996); *see also High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005); *Collier v. Bayer*, 408 F.3d 1279, 1285 (9th Cir. 2005); *Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000). The Ninth Circuit Court of Appeals has never ruled NRS § 34.726 to be inadequate. Hernandez does not show NRS § 34.726 to be other than clear, consistently applied and well-established at the time of his default.

<u>NRS § 34.810 – Failure to Assert Claim on Direct Appeal</u>

On the appeal in Hernandez's first state habeas action, the Nevada Supreme Court ruled certain of Hernandez's claims to be procedurally barred under NRS § 34.810 because they were not asserted on his direct appeal. *See Hernandez*, 124 Nev. at 991 n.46 and 993 n.50, 194 P.3d at 1244 n.46 and 1245 n.50.

The respondents meet their initial burden by asserting that NRS § 34.810 constituted an independent and adequate state procedural ground for the Nevada

Supreme Court's ruling. *See* Motion to Dismiss (ECF No. 161), pp. 4-6; *see also* *Bennett*, 322 F.3d at 586. In response, Hernandez argues that NRS § 34.810 was inadequate. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 46-50.

The Ninth Circuit Court of Appeals has held NRS § 34.810 to be inadequate to support application of the procedural default defense. *See, e.g.*, *Valerio v. Crawford*, 306 F.3d 742, 776-78 (9th Cir. 2002). In the face of that ruling, the respondents do not show that as of 2002, when Hernandez's direct appeal was completed, the state courts regularly and consistently applied § 34.810 in habeas cases. *See Riley v.* McDaniel, 786 F.3d 719, 722-23 (9th Cir. 2015). The Court does not consider § 34.810 to be adequate to support application of the procedural default doctrine in this case.

Cause and Prejudice – Ineffective Assistance of Post-Conviction Counsel

Inadequate assistance of counsel in a first state habeas action may establish cause for the procedural default of a claim of ineffective assistance of trial counsel. *See Martinez*, 566 U.S. at 9. This may provide a means for Hernandez to overcome the procedural default of claims of ineffective assistance of trial counsel. However, this issue is intertwined with the merits of Hernandez's claims of ineffective assistance of trial counsel, such that it will be better addressed in conjunction with the merits of those claims. The Court will, therefore, deny Respondents' motion to dismiss with respect to claims of ineffective assistance of trial counsel, without prejudice to Respondents asserting the procedural default defense to such claims in their answer.

Cause and Prejudice – Incompetence of the Petitioner

Hernandez also argues that he can overcome the procedural default of his claims by showing cause and prejudice on account of his "substantial psychological imbalance and organic brain deficiency." Opposition to Motion to Dismiss (ECF No. 168), pp. 126-27. The Court finds this argument to be without merit. Hernandez does not relate his alleged incompetence to his procedural default of any claim and does not explain in any detail how his alleged incompetence hindered his ability to comply with a state procedural rule.

<u>Anticipatory Procedural Default</u>

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate the state-law procedural bar of an unexhausted claim, and to treat such a claim as subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman*, 501 U.S. at 731). In light of the procedural history of this case, and, in particular, the rulings of the state courts in Hernandez's second state habeas action, this Court determines that Hernandez's unexhausted claims would be ruled procedurally barred in state court if Hernandez were to again return to state court to attempt to exhaust those claims. Therefore, the anticipatory default doctrine applies to Hernandez's unexhausted claims, and the Court considers those claims to be technically exhausted but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317; *see also* Motion to Dismiss (ECF No. 161), p. 6 (Respondents' argument that anticipatory default doctrine should apply to unexhausted claims); Opposition to Motion to Dismiss (ECF No. 168), p. 14 n.5 (Hernandez agrees anticipatory default doctrine should apply).

<u>Claim-by-Claim Procedural Default Analysis</u>

<u>Claim 1A</u>

In Claim 1A, Hernandez claims that his trial counsel were ineffective, in violation of his federal constitutional rights, for failing to investigate and introduce evidence at trial concerning Hernandez's "organic brain damage, severe delusional disorder, fetal alcohol spectrum disorder and ... genetic predisposition toward alcohol-induced psychosis, which was worsened by the onset of dementia caused by his severe heart condition." Fourth Amended Petition (ECF No. 147), pp. 28-47.

Hernandez did not assert any claim of ineffective assistance of counsel on his direct appeal. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41). On the appeal from the denial of relief in

his first state habeas action, Hernandez claimed ineffective assistance of his trial counsel, and he made a *pro forma* assertion that his trial counsel failed to adequately investigate his case; however, the minimal argument that Hernandez made in that regard did not fairly present the claim that he asserts here as Claim 1A. *See* Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). Because Hernandez did not raise this claim on his direct appeal or on the appeal in his first state habeas action, it was procedurally barred in state court, either as a result of the Nevada Supreme Court's ruling on his second state habeas action, or as a matter of anticipatory procedural default, and is potentially barred in this case by the procedural default doctrine.

Hernandez argues, however, that inadequate assistance of counsel in his first state habeas action was cause for the procedural default of his ineffective assistance of trial counsel claims. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 51-126. Ineffective assistance of counsel in a first state habeas action may establish cause for the procedural default of a claim of ineffective assistance of trial counsel. *See Martinez*, 566 U.S. at 9. This rule may provide a means for Hernandez to overcome the procedural default of this ineffective assistance of trial counsel claim. However, this issue is intertwined with the merits of the claim, such that it will be better addressed in conjunction with the merits of the claim. The Court will, therefore, deny Respondents' motion to dismiss with respect to the ineffective assistance of trial counsel claim in Ground 1A, without prejudice to Respondents asserting the procedural default defense to that claim in their answer.

Claim 1B

In Claim 1B, Hernandez claims that his trial counsel were ineffective, in violation of his federal constitutional rights, "in their development and presentation of their second-degree murder defense." Fourth Amended Petition (ECF No. 147), pp. 48-58. Hernandez claims that his trial counsel were ineffective because they "failed to

investigate, develop and present the wealth of available evidence" to support their theory of defense, that the killing was second-degree, rather than first-degree, murder. *Id.* at 48.

Hernandez did not assert any such claim of ineffective assistance of counsel on either his direct appeal or the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). Because Hernandez did not raise this claim on his direct appeal or on the appeal in his first state habeas action, it was procedurally barred in state court, either as a result of the Nevada Supreme Court's ruling on his second state habeas action, or as a matter of anticipatory procedural default, and is potentially barred in this case by the procedural default doctrine.

Here again, however, Hernandez argues that inadequate assistance of counsel in his first state habeas action was cause for the procedural default of his ineffective assistance of trial counsel claims. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 51-126. This issue is intertwined with the merits of the claim, such that it will be better addressed in conjunction with the merits of the claim. The Court will, therefore, deny Respondents' motion to dismiss with respect to the ineffective assistance of trial counsel claim in Ground 1B, without prejudice to Respondents asserting the procedural default defense to that claim in their answer.

Claim 1C

In Claim 1C, Hernandez claims that his trial counsel were ineffective, in violation of his federal constitutional rights, "for failing to move the trial court to question all of the jurors regarding any conversations concerning the purchase of the gift," a gift that some jurors purchased for the child of Hernandez and the murder victim. Fourth Amended Petition (ECF No. 147), pp. 58-59.

Here again, Hernandez did not assert any such claim on either his direct appeal or the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). Because Hernandez did not raise this claim on his direct appeal or on the appeal in his first state habeas action, it was procedurally barred in state court, either as a result of the Nevada Supreme Court's ruling on his second state habeas action, or as a matter of anticipatory procedural default, and is potentially barred in this case by the procedural default doctrine.

Again, though, Hernandez argues that inadequate assistance of counsel in his first state habeas action was cause for the procedural default of his ineffective assistance of trial counsel claims. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 51-126. This issue is intertwined with the merits of the claim, such that it will be better addressed in conjunction with the merits of the claim. The Court will, therefore, deny Respondents' motion to dismiss with respect to the ineffective assistance of trial counsel claim in Ground 1C, without prejudice to Respondents asserting the procedural default defense to that claim in their answer.

Claim 1D

In Claim 1D, Hernandez claims that his trial counsel were ineffective, in violation of his federal constitutional rights, for "failure to object to prosecutorial misconduct." Fourth Amended Petition (ECF No. 147), pp. 59-60. Hernandez incorporates into this claim specific instances of alleged prosecutorial misconduct. *See id.*

Hernandez did not assert any such claim on either his direct appeal or the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). Because Hernandez

did not raise this claim on his direct appeal or on the appeal in his first state habeas action, it was procedurally barred in state court, either as a result of the Nevada Supreme Court's ruling on his second state habeas action, or as a matter of anticipatory procedural default, and is potentially barred in this case by the procedural default doctrine.

Hernandez argues that inadequate assistance of counsel in his first state habeas action was cause for the procedural default of his ineffective assistance of trial counsel claims. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 51-126. This issue is intertwined with the merits of the claim, such that it will be better addressed in conjunction with the merits of the claim. The Court will, therefore, deny Respondents' motion to dismiss with respect to the ineffective assistance of trial counsel claim in Ground 1D, without prejudice to Respondents asserting the procedural default defense to that claim in their answer.

Claim 1E

In Claim 1E, Hernandez claims that his trial counsel were ineffective, in violation of his federal constitutional rights, for "failing to investigate, develop and present mitigation evidence at trial." Fourth Amended Petition (ECF No. 147), pp. 60-64. Specifically, Hernandez points to his allegations in Claim 1A as matters that should have been investigated and used as mitigation in the penalty phase of his trial. *See id.*

Hernandez asserted no such claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41). On the appeal from the denial of relief in his first state habeas action, Hernandez claimed ineffective assistance of his trial counsel, and he made a general claim that his trial counsel failed to adequately investigate and present mitigation evidence at the penalty phase of his trial; however, as with Claim 1A, the minimal, generalized argument that Hernandez made in that regard did not fairly present the claim that he asserts here as Claim 1E. *See* Appellant's Amended Opening Brief, Exh. 14 (ECF

17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8).

Again, Hernandez argues that inadequate assistance of counsel in his first state habeas action was cause for the procedural default of his ineffective assistance of trial counsel claims. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 51-126. This issue is intertwined with the merits of the claim, such that it will be better addressed in conjunction with the merits of the claim. The Court will, therefore, deny Respondents' motion to dismiss with respect to the ineffective assistance of trial counsel claim in Ground 1E, without prejudice to Respondents asserting the procedural default defense to that claim in their answer.

Claim 1F

In Claim 1F, Hernandez claims that his federal constitutional rights were violated as a result of the cumulative effect of the ineffective assistance of his trial counsel. Fourth Amended Petition (ECF No. 147), pp. 64-66.

The Court determines that, to the extent that there are claims of ineffective assistance of trial counsel that may not be barred by the procedural default doctrine, this claim is not subject to dismissal as procedurally defaulted. The Court will, therefore, deny the motion to dismiss with respect to this claim, without prejudice to Respondents asserting the procedural default defense to it in their answer.

Claim 2

In Claim 2, Hernandez claims that his federal constitutional rights were violated because he "was deprived of expert assistance to aid in his defense during the guilt and penalty phases of his trial." Fourth Amended Petition (ECF No. 147), pp. 67-92. Hernandez asserts that his counsel should have retained "a Spanish-speaking neuropsychologist who could explain the impact of his organic brain damage, heart-related dementia, Fetal Alcohol Spectrum Disorder (FASD), psychopathology (mental illness), and genetic predisposition toward alcoholism on the date of the offense," "an expert in Fetal Alcohol Spectrum Disorder," "experts who could explain to the jury that

the crime scene evidence was consistent with an offense that occurred during the 'heat of passion' and inconsistent with the state's theory of first-degree murder," and "an institutionalization expert who could explain to the jury that if Mr. Hernandez was given a life sentence, he would not present a danger to the guards and inmates." *Id.* at 67, 77.

Hernandez argues that he asserted this claim on the appeal in his first state habeas action; he points to a single sentence in his opening brief on that appeal, in which he argued: "Trial counsel failed to investigate the case in any appropriate manner, and likewise failed to consult appropriate expert witnesses to prepare for trial, establish a legitimate defense, and actually *defend* Hernandez...." *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 18-19, quoting Appellant's Amended Opening Brief, Exh. 14, (ECF No. 17), p. 28. That single statement in the state-court brief did not fairly present the claim that Hernandez asserts here as Claim 2.

Here too, though, Hernandez argues that inadequate assistance of counsel in his first state habeas action was cause for the procedural default of his ineffective assistance of trial counsel claims. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 51-126. This issue is intertwined with the merits of the claim, such that it will be better addressed in conjunction with the merits of the claim. The Court will, therefore, deny Respondents' motion to dismiss with respect to the ineffective assistance of trial counsel claims in Claim 2, without prejudice to Respondents asserting the procedural default defense to that claim in their answer. The Court will grant the motion to dismiss with respect to all other claims in Claim 2.

Claim 3

In Claim 3, Hernandez claims that his federal constitutional rights were violated "because a biased and improperly impassioned jury determined his sentence." Fourth Amended Petition (ECF No. 147), pp. 93-97. This claim focuses on his allegation that "[a]fter having found Mr. Hernandez guilty of these crimes in the guilt phase of the trial, but before commencement of the penalty phase, two jurors and one alternate juror were

so impassioned by their sympathy for the child that, against the trial court's orders, they went together and purchased a gift for the child." *Id.* at 93.

Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3), pp. 14-17. This claim is not procedurally defaulted. The motion to dismiss will be denied with respect to Claim 3.

Claim 4

In Claim 4, Hernandez claims that his federal constitutional rights were violated "because of trial court error and ineffective assistance of counsel during voir dire." Fourth Amended Petition (ECF No. 147), pp. 98-101.

Hernandez asserted this claim in part on his direct appeal, and in part on the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3), pp. 21-22; Appellant's Amended Opening Brief, Exh. 14, (ECF No. 17), p. 28. To the extent that the claims of ineffective assistance of counsel in Claim 4 are more detailed than those asserted on the appeal in Hernandez's first state habeas action, Hernandez might be able to overcome the procedural default by showing inadequate assistance of counsel in his first state habeas action. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 51-126. Again, though, this issue is intertwined with the merits of the claim, such that it will be better addressed in conjunction with the merits of the claim. The Court will, therefore, deny Respondents' motion to dismiss with respect to Claim 4, without prejudice to Respondents asserting the procedural default defense to that claim in their answer.

Claim 5

In Claim 5, Hernandez claims that his federal constitutional rights were violated "because neither the guilt phase jury instruction on 'murder by torture' nor the penalty phase jury instruction on torture sufficiently narrowed the class of defendants eligible for the death penalty." Fourth Amended Petition (ECF No. 147), pp. 102-07.

Hernandez asserted this claim, in part, with respect to the question of intent to kill, on his direct appeal. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3),

pp. 42-43; Appellant's Reply Brief, Exh. 12 (ECF No. 16), pp. 14-15. Hernandez asserted this claim, with respect to the relationship between murder by torture as a theory of first-degree murder, and murder by torture as an aggravating circumstance, on the appeal in his first state habeas action. *See* Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8), pp. 4-8. Therefore, Claim 5 is not procedurally defaulted. The Court will deny the motion to dismiss with respect to Claim 5.

Claim 7

In Claim 7, Hernandez claims that his federal constitutional rights were violated "due to the Nevada Supreme Court's purported 're-weighing' and 're-sentencing' after invalidating an aggravating circumstance, and to its failure to properly consider the effect of the unconstitutional penalty phase jury instructions in its harmless error assessment." Fourth Amended Petition (ECF No. 147), pp. 112-14.

Hernandez did not present this claim on either his direct appeal or the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). Because Hernandez did not raise this claim on his direct appeal or on the appeal in his first state habeas action, it is subject to dismissal as procedurally defaulted. Respondents' motion to dismiss will be granted with respect to Claim 7.

Claim 8

In Claim 8, Hernandez claims that his federal constitutional rights were violated "due to the severe and pervasive prosecutorial misconduct throughout various parts of Mr. Hernandez's trial." Fourth Amended Petition (ECF No. 147), pp. 115-19.

Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3), pp. 23-40; Appellant's Reply Brief, Exh. 12 (ECF No. 16), pp. 6-12. Claim 8 is not procedurally defaulted. The Court will deny the motion to dismiss with respect to Claim 8.

Claim 9

In Claim 9, Hernandez claims that his federal constitutional rights were violated "because the trial court unconstitutionally allowed the introduction of hearsay statements made by a child." Fourth Amended Petition (ECF No. 147), pp. 120-22.

Hernandez did not present this claim on either his direct appeal or the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). Because Hernandez did not raise this claim on his direct appeal or on the appeal in his first state habeas action, it is subject to dismissal as procedurally defaulted.

Hernandez argues that there is cause and prejudice relative to the default because he was forced to remove this claim from his briefing on his direct appeal as a result of the page limit imposed by the Nevada Supreme Court. The Court disagrees that this amounts to cause. Hernandez was not prevented from asserting this claim on his direct appeal.

Hernandez also argues that he presented the claim on the appeal in his first state habeas action. However, he points to his assertion, on that appeal, not of this substantive claim, but of a related claim of ineffective assistance of counsel. Assertion of an ineffective assistance of counsel claim in state court does not exhaust the related substantive claim. *See Rose v. Palmateer*, 395 F.3d 1108, 1111-12 (9th Cir. 2005).

Respondents' motion to dismiss will be granted with respect to Claim 9.

Claim 10

In Claim 10, Hernandez claims that his federal constitutional rights were violated "because the trial court unconstitutionally allowed the introduction of evidence of prior uncharged bad acts." Fourth Amended Petition (ECF No. 147), pp. 123-25.

Hernandez did not present this claim on either his direct appeal or the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3);

Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). Because Hernandez did not raise this claim on his direct appeal or on the appeal in his first state habeas action, it is subject to dismissal as procedurally defaulted.

Here again, Hernandez argues that there is cause and prejudice relative to the default because he was forced to remove this claim from his briefing on his direct appeal as a result of the page limit imposed by the Nevada Supreme Court. The Court disagrees that this amounts to cause. Hernandez was not prevented from asserting this claim on his direct appeal.

Hernandez also argues that he presented the claim on the appeal in his first state habeas action. However, as with Claim 9, he points to his assertion, on that appeal, not of this substantive claim, but of a related claim of ineffective assistance of counsel. Assertion of an ineffective assistance of counsel claim in state court does not exhaust the related substantive claim. *See Rose*, 395 F.3d at 1111-12.

Respondents' motion to dismiss will be granted with respect to Claim 10.

Claim 11

In Claim 11, Hernandez claims that his federal constitutional rights were violated "because the State failed to comply with its obligation to disclose exculpatory and/or impeachment evidence and because the trial court unconstitutionally failed to order the state to comply with the requirements of *Brady*. Fourth Amended Petition (ECF No. 147), pp. 126-30.

Hernandez did not present this claim on either his direct appeal or the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). Because Hernandez did not

raise this claim on his direct appeal or on the appeal in his first state habeas action, it is subject to dismissal as procedurally defaulted.

Here too, Hernandez argues that there is cause and prejudice relative to the default because he was forced to remove this claim from his briefing on his direct appeal as a result of the page limit imposed by the Nevada Supreme Court. The Court disagrees that this amounts to cause. Hernandez was not prevented from asserting this claim on his direct appeal.

And also again, Hernandez argues that he presented this claim on the appeal in his first state habeas action; however, as with Claims 9 and 10, he points to his assertion, on that appeal, not of this substantive claim, but of a related claim of ineffective assistance of counsel. Assertion of an ineffective assistance of counsel claim in state court does not exhaust the related substantive claim. *See Rose*, 395 F.3d at 1111-12.

Respondents' motion to dismiss will be granted with respect to Claim 11.

Claim 12

In Claim 12, Hernandez claims that his federal constitutional rights were violated "because the undue influence of publicity on Mr. Hernandez's trial denied him his right to due process" and because his trial counsel was ineffective for failing to move for a change of venue. Fourth Amended Petition (ECF No. 147), pp. 131-32.

Hernandez asserted these claims on the appeal in his first state habeas action. *See* Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17), pp. 28-31, 44-48. The Nevada Supreme Court ruled on the ineffective assistance of counsel claim on its merits. *See Hernandez*, 124 Nev. at 992-93, 194 P.3d at 1244-45. Regarding the substantive claim, that Hernandez's constitutional rights were violated because of pretrial publicity, the Nevada Supreme Court held that claim to be procedurally barred, under NRS § 34.810, because Hernandez did not raise the claim on his direct appeal. *See id.*, 124 Nev. at 993 n.50, 194 P.3d 1245 n.50. As is discussed above, however, NRS § 34.810 is not adequate to support application of the procedural default doctrine.

27

1    Therefore, Claim 12 is not barred in this action by the procedural default doctrine.

2    Respondents' motion to dismiss will be denied with respect to Claim 12.

3                    Claim 13A

4        In Claim 13A, Hernandez claims that his federal constitutional rights were

5    violated because "[t]he malice instructions were unconstitutional." Fourth Amended

6    Petition (ECF No. 147), pp. 133-37.

7        Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening

8    Brief, Exh. 230 (ECF No. 117-3), pp.48-51. This claim is not procedurally defaulted. The

9    motion to dismiss will be denied with respect to Claim 13A.

10                   Claim 13B

11       In Claim 13B, Hernandez claims that his federal constitutional rights were

12   violated because "[t]he felony-murder instruction was unconstitutional." Fourth Amended

13   Petition (ECF No. 147), p. 138.

14       Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening

15   Brief, Exh. 230 (ECF No. 117-3), p. 42 ("The Felony-Murder Instruction Was

16   Unconstitutional"); Appellant's Reply Brief, Exh. 12 (ECF No. 16), p. 13 ("Appellant

17   contends that the felony-murder instruction is unconstitutional...."). This claim is not

18   procedurally defaulted. The motion to dismiss will be denied with respect to Claim 13B.

19                   Claim 13C

20       In Claim 13C, Hernandez claims that his federal constitutional rights were

21   violated because "[t]he murder by torture instruction was unconstitutional." Fourth

22   Amended Petition (ECF No. 147), pp. 138-39.

23       Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening

24   Brief, Exh. 230 (ECF No. 117-3), pp. 42-43. This claim is not procedurally defaulted.

25   The motion to dismiss will be denied with respect to Claim 13C.

26

27

28

Claim 13E

In Claim 13E, Hernandez claims that his federal constitutional rights were violated because "[t]he deadly weapons enhancement instruction was unconstitutionally vague." Fourth Amended Petition (ECF No. 147), pp. 141-42.

Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3), pp. 41-42; Appellant's Reply Brief, Exh. 12 (ECF No. 16), p. 13. This claim is not procedurally defaulted. The motion to dismiss will be denied with respect to Claim 13E.

Claim 13F

In Claim 13F, Hernandez claims that his federal constitutional rights were violated because "[t]he voluntary intoxication instruction was unconstitutional." Fourth Amended Petition (ECF No. 147), pp. 142-43.

Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3), pp. 45-46. This claim is not procedurally defaulted. The motion to dismiss will be denied with respect to Claim 13F.

Claim 13G

In Claim 13G, Hernandez claims that his federal constitutional rights were violated because "[t]he jury penalty phase unanimity instruction was unconstitutional." Fourth Amended Petition (ECF No. 147), pp. 143-45.

Hernandez did not present this claim on either his direct appeal or the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). Because Hernandez did not raise this claim on his direct appeal or on the appeal in his first state habeas action, it is subject to dismissal as procedurally defaulted. Respondents' motion to dismiss will be granted with respect to Claim 13G.

1              <u>Claim 13H</u>

2           In Claim 13H, Hernandez claims that his federal constitutional rights were

3 violated because "[t]he 'anti-sympathy' instruction was unconstitutional." Fourth

4 Amended Petition (ECF No. 147), pp. 145-46.

5           Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening

6 Brief, Exh. 230 (ECF No. 117-3), pp. 54-55. This claim is not procedurally defaulted.

7 The motion to dismiss will be denied with respect to Claim 13H.

8              <u>Claim 13I</u>

9           In Claim 13I, Hernandez claims that his federal constitutional rights were violated

10 because "[t]he jury guilty phase unanimity instruction was unconstitutional." Fourth

11 Amended Petition (ECF No. 147), pp. 146-47.

12           Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening

13 Brief, Exh. 230 (ECF No. 117-3), pp. 46-47. This claim is not procedurally defaulted.

14 The motion to dismiss will be denied with respect to Claim 13I.

15              <u>Claim 13J</u>

16           In Claim 13J, Hernandez claims that his federal constitutional rights were violated

17 because "[t]he 'equal and exact justice' instruction was unconstitutional." Fourth

18 Amended Petition (ECF No. 147), pp. 147-48.

19           Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening

20 Brief, Exh. 230 (ECF No. 117-3), pp. 51-52. This claim is not procedurally defaulted.

21 The motion to dismiss will be denied with respect to Claim 13J.

22              <u>Claim 13K</u>

23           In Claim 13K, Hernandez claims that his federal constitutional rights were

24 violated because "[t]he instruction defining 'mutilation' was unconstitutional." Fourth

25 Amended Petition (ECF No. 147), pp. 148-51.

26           Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening

27 Brief, Exh. 230 (ECF No. 117-3), pp. 52-54. This claim is not procedurally defaulted.

28 The motion to dismiss will be denied with respect to Claim 13K.

Claim 13L

In Claim 13L, Hernandez claims that his federal constitutional rights were violated because "[t]he reasonable doubt instruction was unconstitutional." Fourth Amended Petition (ECF No. 147), pp. 151-53.

Hernandez asserted this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3), pp. 47-48. This claim is not procedurally defaulted. The motion to dismiss will be denied with respect to Claim 13L.

Claim 14

In Claim 14, Hernandez claims that his federal constitutional rights were violated because "trial counsel failed to expend or demand the expenditure of the resources necessary to provide Mr. Hernandez adequate representation, or to make a record concerning any denial of those resources." Fourth Amended Petition (ECF No. 147), pp. 154-58.

Hernandez did not present this claim on either his direct appeal or the appeal in his first state habeas action; and, to the extent Hernandez argues that Claim 14 includes a claim of ineffective assistance of trial counsel, he did not raise any such claim on the appeal in his second state habeas action and has not suggested any cause for that default. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8); Appellant's Opening Brief, Exh. 201 (ECF No. 98-5). Because Hernandez did not raise this claim on his direct appeal or on the appeal in his first state habeas action, and because he did not assert the claim of ineffective assistance of counsel on the appeal in his second state habeas action, Claim 14 is subject to dismissal as procedurally defaulted. Respondents' motion to dismiss will be granted with respect to Claim 14.

Claim 15

2      In Claim 15, Hernandez claims that his federal constitutional rights were violated

3  "because the introduction of inappropriate photographs into evidence deprived him of

4  his right to a fair trial." Fourth Amended Petition (ECF No. 147), pp. 159-61.

5      Hernandez did not present this claim on either his direct appeal or the appeal in

6  his first state habeas action; and, to the extent Hernandez argues that Claim 15

7  includes a claim of ineffective assistance of trial counsel, he did not raise any such

8  claim on the appeal in his second state habeas action and has not suggested any cause

9  for that default. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's

10  Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh.

11  14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's

12  Supplemental Brief, Exh. 235 (ECF No. 117-8); Appellant's Opening Brief, Exh. 201

13  (ECF No. 98-5). Because Hernandez did not raise this claim on his direct appeal or on

14  the appeal in his first state habeas action, and because he did not assert any related

15  claim of ineffective assistance of counsel on the appeal in his second state habeas

16  action, Claim 15 is subject to dismissal as procedurally defaulted. Respondents' motion

17  to dismiss will be granted with respect to Claim 15.

18      Claim 16

19      In Claim 16, Hernandez claims that his federal constitutional rights were violated

20  "because the trial court unconstitutionally allowed the introduction of statements made

21  by Mr. Hernandez in violation of his Fifth Amendment rights," and because his trial

22  counsel was ineffective for failing to object to the introduction of those statements.

23  Fourth Amended Petition (ECF No. 147), pp. 162-63.

24      Respondents concede that Hernandez asserted the ineffective assistance of

25  counsel part of Claim 16 on the appeal in his first state habeas action, and that the

26  Nevada Supreme Court ruled on that issue on its merits. *See* Motion to Dismiss

27

28

(ECF No. 161), p. 24; *see also* Appellant's Amended Opening Brief, Exh. 14, (ECF No. 17), p. 29; *Hernandez*, 124 Nev. at 988-89, 194 P.3d at 1241-42. That part of Claim 16 is not procedurally defaulted, and the motion to dismiss will be denied with respect to it.

Regarding the substantive claim – that the trial court's admission of the statements into evidence violated Hernandez's constitutional rights – Hernandez did not raise that part of Claim 16 on either his direct appeal or the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17). Hernandez argues that there is cause and prejudice relative to the default because he was forced to remove this claim from his briefing on his direct appeal as a result of the page limit imposed by the Nevada Supreme Court. The Court disagrees that this amounts to cause. Hernandez was not prevented from asserting this claim on his direct appeal. Hernandez also argues that he presented the claim on the appeal in his first state habeas action; however, he points to his assertion, on that appeal, not of this substantive claim, but of a related claim of ineffective assistance of counsel. Assertion of an ineffective assistance of counsel claim in state court does not exhaust the related substantive claim. *See Rose*, 395 F.3d at 1111-12. The substantive part of Claim 16 – all of Claim 16 other than the ineffective assistance of trial counsel claim – is barred by the procedural default doctrine, and Respondents' motion to dismiss will be granted with respect to that part of Claim 16.

Claim 18

In Claim 18, Hernandez claims that his federal constitutional rights were violated "because the trial court failed to conduct a sufficient inquiry in response to Mr. Hernandez's motion for new counsel." Fourth Amended Petition (ECF No. 147), pp. 168-70.

Hernandez asserted this claim on the appeal in his first state habeas action. *See* Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17), pp. 25-28. The Nevada

Supreme Court held that claim to be procedurally barred, under NRS § 34.810, because Hernandez did not raise the claim on his direct appeal. See *id.*, 124 Nev. at 991 n.46, 194 P.3d 1244 n.46. As is discussed above, however, NRS § 34.810 is not adequate to support application of the procedural default doctrine.

Therefore, the Court determines that Claim 18 is not barred in this action by the procedural default doctrine. Respondents' motion to dismiss will be denied with respect to Claim 18.

Claim 19

In Claim 19, Hernandez claims that his federal constitutional rights were violated because his "capital trial and sentencing and review on direct appeal were conducted before state judicial officers whose tenure in office was not during good behavior but whose tenure was dependent on popular election, and who failed to conduct fair and adequate appellate review." Fourth Amended Petition (ECF No. 147), pp. 171-79.

Hernandez did not present this claim on either his direct appeal or the appeal in his first state habeas action. *See* Appellant's Opening Brief, Exh. 230 (ECF No. 117-3); Appellant's Reply Brief, Exh. 12 (ECF No. 16, pp. 1-41); Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17); Appellant's Reply Brief, Exh. 15 (ECF No. 18, pp. 1-17); Appellant's Supplemental Brief, Exh. 235 (ECF No. 117-8). Because Hernandez did not raise this claim on his direct appeal or on the appeal in his first state habeas action, it is subject to dismissal as procedurally defaulted. Respondents' motion to dismiss will be granted with respect to Claim 19.

Claim 20

In Claim 20, Hernandez claims that his federal constitutional rights were violated because his "direct appellate counsel was ineffective." Fourth Amended Petition (ECF No. 147), pp. 180-81. Hernandez incorporates all of his other claims into Claim 20 and asserts that his appellate counsel was ineffective for not raising the claims on his direct appeal. *See id.*

Respondents contend that Hernandez did not assert such a claim in state court on either his direct appeal or the appeal in his first state habeas action. *See* Motion to Dismiss (ECF No. 161), p. 26; Reply in Support of Motion to Dismiss (ECF No. 173), p. 29. Respondents' argument is that, on the appeal in his first state habeas action, Hernandez only claimed ineffective assistance of counsel in an attempt to show cause for the procedural default of claims. *See id.*

The Court determines that Hernandez did, however, on the appeal in his first state habeas action, assert a claim for habeas relief, under *Strickland v. Washington*, 466 U.S. 668 (1984), based on ineffective assistance of appellate counsel. *See* Appellant's Amended Opening Brief, Exh. 14 (ECF No. 17), pp. 39-41; *see also Hernandez*, 124 Nev. at 995, 194 P.3d at 1246 (ruling on the claim on its merits). Claim 20 is not procedurally defaulted. Respondents' motion to dismiss will be denied with respect to Claim 20.

Claim 24

In Claim 24, Hernandez claims that his federal constitutional rights were violated "because Nevada's death penalty scheme fails to narrow the number of people eligible for the death penalty." Fourth Amended Petition (ECF No. 147), pp. 213-17.

Hernandez asserted such a claim on his direct appeal. *See* Appellant's Opening Brief, Appellant's Opening Brief, Exh. 230 (ECF No. 117-3), pp. 62-77. Therefore, this claim is not procedurally defaulted. The Court will deny Respondents' motion to dismiss with respect to Claim 24.

Claim 25

In Claim 25, Hernandez claims that his death sentence is invalid under the federal constitution "because the death penalty is unconstitutional under all circumstances." Fourth Amended Petition (ECF No. 147), pp. 218-19.

Hernandez asserted such a claim on his direct appeal. *See* Appellant's Opening Brief, Appellant's Opening Brief, Exh. 230 (ECF No. 117-3), pp. 61-62. Therefore, this

claim is not procedurally defaulted. The Court will deny Respondents' motion to dismiss with respect to Claim 25.

<u>Claim 26</u>

In Claim 26, Hernandez claims that his federal constitutional rights were violated "because the death penalty was constitutionally excessive under the facts of Mr. Hernandez's case." Fourth Amended Petition (ECF No. 147), p. 220.

Hernandez asserted such a claim on his direct appeal. *See* Appellant's Opening Brief, Appellant's Opening Brief, Exh. 230 (ECF No. 117-3), pp. 58-60. Therefore, this claim is not procedurally defaulted. The Court will deny Respondents' motion to dismiss with respect to Claim 26.

<u>Claim 27</u>

In Claim 27, Hernandez claims that his federal constitutional rights were violated "due to the cumulative errors in the admission of evidence and instructions, gross misconduct by state officials and witnesses, and the systematic deprivation of Mr. Hernandez's right to the effective assistance of counsel." Fourth Amended Petition (ECF No. 147), pp. 221-22.

This cumulative error claim is not barred by the procedural default doctrine, to the extent there are other viable claims in Hernandez's petition. The motion to dismiss will be denied with respect to Ground 27.

<u>Respondents' Arguments Not Addressed Above</u>

With respect to several of Hernandez's claims, the respondents point out that the heading of the claim in Hernandez's fourth amended petition can be read to assert constitutional theories not pursued by Hernandez on either his direct appeal or the appeal in his first state habeas action. *See*, *e.g.*, Motion to Dismiss (ECF No. 161), pp. 6-7 (regarding Claim 3, arguing: "Accordingly, to the extent Hernandez relies upon the broad heading to claim 3 to present a theory for relief beyond the claim of juror misconduct claim alleged on direct appeal, claim 3 is unexhausted, but procedurally defaulted under Nev. Rev. Stat. 34.726, Nev. Rev. Stat. 34.800, Nev. Rev. Stat. 34.

810(1)(b).”). In these instances, the Court observes that Hernandez generally does not set forth analysis regarding all the constitutional theories suggested in the heading. And, in these instances, it appears that Hernandez did not pursue all the suggested constitutional theories in state court. Respondents may be correct, therefore, that, if actually pursued by Hernandez in this case, such theories would be barred by the procedural default doctrine. As it appears that Hernandez does not seriously intend to pursue all the suggested theories, the Court does not address these arguments by the respondents in this order. Regarding the claims not dismissed, this order is without prejudice to the respondents reasserting these procedural default arguments in their answer.

Claim 21 – Ripeness and Exhaustion

In Claim 21, Hernandez claims that his death sentence is invalid under the federal constitution “because execution by lethal injection violates the constitutional prohibition against cruel and unusual punishments.”  Fourth Amended Petition (ECF No. 147), pp. 182-208.

Respondents contend in their motion to dismiss that Claim 21 is neither ripe nor exhausted in state court. *See* Motion to Dismiss (ECF No. 161), p. 27. The Court determines that those arguments will be better addressed after the respondents file an answer and Hernandez files a reply. The Court declines to address these arguments regarding Claim 21 in this order. The motion to dismiss will be denied with respect to Claim 21, without prejudice to the respondents reasserting these arguments in their answer.

Claims 28 and 29 – Potential Merit

In Claim 28, Hernandez claims that his federal constitutional rights were violated because of “the absence of a jury instruction defining the standard of proof as beyond a reasonable doubt in the weighing stage of Mr. Hernandez's penalty hearing.” Fourth Amended Petition (ECF No. 147), pp. 223-24. And, in Claim 29, Hernandez claims that his federal constitutional rights were violated because “[t]he Nevada Supreme Court's

re-weighing and re-sentencing after striking the burglary aggravator substituted a decision of an appellate court for a decision reserved exclusively for a jury." *Id.* at 225-29.

Respondents argue in their motion to dismiss that these claims may be procedurally defaulted, and that, at any rate, they are without potential merit. *See* Motion to Dismiss (ECF No. 161), pp. 27-28. Here too, the Court determines that these arguments will be better addressed after the respondents file an answer and Hernandez files a reply. The Court declines to address these arguments in this order. The motion to dismiss will be denied with respect to Claims 28 and 29, without prejudice to the respondents reasserting these arguments in their answer.

Motion for Evidentiary Hearing

Hernandez requests an evidentiary hearing (ECF No. 167). Respondents filed an opposition to that motion (ECF No. 174), and Hernandez filed a reply (ECF No. 179).

Evidentiary hearings are authorized in federal habeas corpus actions by Rule 8 of the Rules Governing § 2254 Cases. However, an evidentiary hearing is not required if the issues can be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise."); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Moreover, "an evidentiary hearing is not required if the claim presents a purely legal question and there are no disputed facts." *Beardslee v. Woodford*, 358 F.3d 560, 585 (9th Cir. 2004); *see also Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992).

Hernandez requests an evidentiary hearing to prove his allegations that there is cause and prejudice with respect to his procedural defaults under *Martinez* and because of his incompetence. *See* Motion for Evidentiary Hearing (ECF No. 167), pp. 4-6.

With respect to the question of cause and prejudice under *Martinez*, as is discussed above, the Court declines to reach that question in this order. Those issues will be resolved, as necessary, in conjunction with the Court's consideration of the merits of the subject claims. Therefore, an evidentiary hearing regarding those issues is unnecessary at this time.

With respect to the question of cause and prejudice as a result of Hernandez's alleged incompetence, as is discussed above, the Court finds that the argument that Hernandez's alleged incompetence is cause for any procedural default is patently without merit. Hernandez does not relate his alleged incompetence to his procedural default of any claim and does not explain in any detail how his alleged incompetence hindered his ability to comply with a state procedural rule. *See* Opposition to Motion to Dismiss (ECF No. 168), pp. 126-27.

The Court will, therefore, deny Hernandez's motion for an evidentiary hearing. The denial of this motion is without prejudice to Hernandez filing a new motion for an evidentiary hearing, if factually and legally justified, in conjunction with the briefing of the merits of his remaining claims, as contemplated in the scheduling order entered February 10, 2015 (ECF No. 94).

Hernandez's *Pro Se* Motions and Respondents' Motions to Strike

While the parties were briefing the respondents' motion to dismiss, Hernandez filed a series of four motions, *pro se,* essentially complaining that his counsel failed to include in his petition claims that he wants to assert, and that his counsel have included in his petition claims that he does not want to assert (ECF Nos. 169, 178, 181 and 183). Respondents, in turn, have filed motions to strike three of those motions (the three in which Hernandez seeks to add claims to his petition) on the ground that the Court's local rules do not permit a represented party to appear *pro se* (ECF Nos. 170, 180, 182). *See* LR IA 11-6.

As Hernandez's motions concern the attorney-client relationship, this matter will be handled *ex parte*. Respondents' motions to strike will be denied. To protect the

confidentiality of communications between Hernandez and his counsel – to the extent possible at this point – the Court will order Hernandez's *pro se* motions placed under seal.

The Court will deny Hernandez's motions, without prejudice. Hernandez's counsel will be directed to consult with Hernandez regarding the matters raised in his motions, and then file a status report under seal, informing the Court of the status of these disputes and stating counsel's position as to how they should be resolved.

**IT IS THEREFORE ORDERED** that Respondents' Motion to Dismiss (ECF No. 161) is **GRANTED IN PART AND DENIED IN PART**. The following claims are dismissed: all of Claim 2 except the ineffective assistance of trial counsel claims, 7, 9, 10, 11, 13G, 14, 15, all of Claim 16 except the ineffective assistance of trial counsel claims, and 19.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Evidentiary Hearing (ECF No. 167) is **DENIED**.

**IT IS FURTHER ORDERED** that Respondents shall, within 120 days from the date of this order, file an answer, responding to the remaining claims in Petitioner's fourth amended habeas petition (Claims 1A, 1B, 1C, 1D, 1E, 1F, the ineffective assistance of trial counsel claims in Claim 2, 3, 4, 5, 6, 8, 12, 13A, 13B, 13C, 13D, 13E, 13F, 13H, 13I, 13J, 13K, 13L, 13M, the ineffective assistance of trial counsel claims in Claim 16, 17, 18, 20, 21, 22, 23, 24, 25, 26, 27, 28 and 29).

**IT IS FURTHER ORDERED** that Petitioner's *pro se* motions (ECF Nos. 169, 178, 181 and 183) are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Respondents' motions to strike (ECF Nos. 170, 180 and 182) are **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to place under seal Petitioner's *pro se* motions (ECF Nos. 169, 178, 181 and 183).

**IT IS FURTHER ORDERED** that Petitioner's counsel are directed to consult with their client regarding the disputes reflected in Petitioner's *pro se* motions (ECF Nos.

169, 178, 181 and 183). Petitioner's counsel shall, thereafter, within 60 days from the date of this order, file, under seal, a status report informing the Court of the status of these disputes and stating counsel's position as to how they may be resolved.

**IT IS FURTHER ORDERED** that, in all other respects, the schedule for further proceedings set forth in the order entered February 20, 2015 (ECF No. 94) will remain in effect.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 25(d), William Gittere is substituted for Timothy Filson as the respondent warden, and Aaron Ford is substituted for Adam Paul Laxalt as the respondent state attorney general. The Clerk of the Court shall update the docket for this case to reflect these changes.

DATED this 4th day of February, 2019.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE