UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FERNANDO NAVARRO HERNANDEZ,<br><br>  Petitioner,<br>  v.<br><br>JOHN HENLEY, *et al.*,<br><br>  Respondents. | Case No. 3:09-cv-00545-MMD-CSD<br><br>ORDER |

**I.    SUMMARY**

Petitioner Fernando Navarro Hernandez was sentenced in Nevada state court to death after a jury found him guilty of burglary while in possession of a weapon; the first-degree murder of his ex-wife, Donna Hernandez (hereinafter "Donna"), with the use of a deadly weapon; the second-degree kidnapping of his daughter, A.H.[1]; and unlawful sexual penetration of a dead body. (ECF No. 53-3.) On March 27, 2025, this Court denied Hernandez's Fifth-Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Fifth-Amended Petition") but granted a Certificate of Appealability for grounds 1a, 1b, 1e, 1f, 4, and 29. (ECF No. 349 ("Merits Order").) Judgment was entered. (ECF No. 350.)

Hernandez now moves to alter or amend the Merits Order judgment. (ECF No. 351 ("Motion").) In his Motion, Hernandez argues that the Court should find that he is entitled to relief on grounds 1a, 1b, 1e, 1f, 4, and 29, or, alternatively, expand the Certificate of Appealability to include grounds 2 and 3. (*Id*.) Respondents opposed the Motion, and Hernandez replied. (ECF Nos. 363, 364.) For the reasons discussed below, the Court denies the Motion.

---
[1]The Court refers to the minor child by her initials.

## II. LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure states that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). As the Ninth Circuit has recognized, "a Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). Absent highly unusual circumstances, reconsideration under Rule 59(e) is "available only when (1) the court committed manifest errors of law or fact, (2) the court is presented with newly discovered or previously unavailable evidence, (3) the decision was manifestly unjust, or (4) there is an intervening change in the controlling law." *Rishor v. Ferguson*, 822 F.3d 482, 491–92 (9th Cir. 2016).

## III. DISCUSSION

Hernandez moves this Court to alter or amend the judgment in this case under Rule 59(e), arguing that (1) this Court committed manifest error of law and fact by refusing to consider the evidence he presented during his second state postconviction proceeding in support of grounds 1 and 2; (2) this Court committed manifest errors of law and fact in denying relief on grounds 1c and 3; (3) this Court committed manifest errors of law and fact when it rejected ground 4 for lack of evidence while simultaneously denying his request for discovery and an evidentiary hearing; (4) this Court committed manifest errors of law and fact when it rejected ground 29; and (5) the recent United States Supreme Court decision in *Loper Bright Enterprises v. Raimondo*[2] demonstrates that this Court should apply a less restrictive form of AEDPA deference. (ECF No. 351.) The Court addresses each argument in turn, and, for the reasons discussed below, the Court determines that reconsideration under Rule 59(e) is not appropriate.

///

---

[2]603 U.S. 369 (2024).

### A. Consideration of evidence from second postconviction proceeding

Hernandez argues that this Court committed a manifest error of law and fact by refusing to consider the evidence he presented during his second state postconviction proceeding in support of grounds 1 and 2. (ECF No. 351 at 9.) Hernandez explains that this Court did not consider that at the time he filed his second state postconviction petition, it would have been reasonable for him to believe the new mitigating evidence he presented would be considered. (*Id*. at 10.) He also explains that *Ramirez* does not bar consideration of the evidence he brought in his properly filed second state postconviction petition because he was a capital petitioner who had an available state process to raise his claims. (*Id*.)

The Court stated in its Merits Order that it could not "consider evidence presented during [or after] Hernandez's second state postconviction proceedings" since it "is precluded from considering evidence presented in a procedurally barred state postconviction action, and . . . Hernandez's second state postconviction action was found to be procedurally barred by the state district court and the Nevada Supreme Court affirmed that ruling." (ECF No. 349 at 14 n.4 (citing *McLaughlin v. Oliver*, 95 F.4th 1239 (9th Cir. 2024)).) Hernandez argues *McLaughlin* only limits consideration of evidence that a prisoner failed to present in compliance with state procedural rules, regardless of whether the state court applied a procedural bar. (ECF No. 351 at 14.) Hernandez contends that his second state postconviction petition was presented in compliance with Nevada's procedural rules, which permit capital petitioners to file a second state postconviction petition asserting first postconviction counsel's ineffectiveness. (*Id*.)

The Court's focus on the state postconviction action being found to be procedurally barred—rather than focusing on the state postconviction action's compliance with state procedural rules—was merely an imprecise rephrasing of *McLaughlin*. The Court accurately cited *McLaughlin* within its discussion of Hernandez's motion for an evidentiary

3

hearing. (ECF No. 349 at 127 (quoting *McLaughlin*, 95 F.4th at 1249) ("[A] failure to present evidence to the state courts 'in compliance with the state procedural rules,' counts as a 'fail[ure] to develop the factual basis of a claim in State court.'").)

Individuals like Hernandez facing the death penalty are entitled to effective assistance of counsel in their first state postconviction proceedings. *See* NRS § 34.820(1)(a). Therefore, Hernandez was entitled to file a second state postconviction petition wherein he could argue ineffective assistance of his first postconviction counsel amounted to cause and prejudice to excuse the procedural default of his second postconviction petition. *See Crump v. Warden*, 934 P.2d 247 (Nev. 1997). However, ineffective counsel arguments must be raised within a reasonable time after they become available. *See Hathaway v. State*, 71 P.3d 503, 507–08 (Nev. 2003). Hernandez failed to comply with this requirement, filing his second postconviction petition 1 year and 5 months after the remittitur issued on the appeal from the order denying his first postconviction petition. (ECF Nos. 53-9 (remittitur issued on February 3, 2009), 264-1 (second postconviction petition filed on July 7, 2010).) Accordingly, under *McLaughlin*, the Court is precluded from considering evidence generated during Hernandez's second postconviction proceedings given that he failed to comply with state procedural rules—namely, raising his first postconviction counsel's ineffectiveness within a reasonable time under *Hathaway*.[3] (ECF No. 351 at 14.)

///

///

---

[3] Hernandez argues that this "reasonable time" requirement was vague and that the Nevada Supreme Court did not adopt a brightline rule in this regard until 2016 when it decided *Rippo v. State*. (ECF No. 351 at 18–19.) Thus, according to Hernandez, he cannot be faulted for failing to comply with a rule that had not yet been clearly established. (*Id*.) Although the definition of "reasonable time" may not have been definitively fleshed out until 2016, this argument fails because Hernandez was on notice that NRS § 34.726—the 1-year time limitation requirement—would be applied to his second postconviction petition. *See Pellegrini v. State*, 34 P.3d 519, 526 (Nev. 2001).

4

### B. Denial of grounds 1c and 3

In ground 1c, Hernandez alleged that his trial counsel was ineffective for failing to move the trial court to question all the jurors regarding any conversations concerning the purchase of a gift for A.H. by two jurors and an alternate juror. (ECF No. 221 at 66.) The Court noted that Hernandez's counsel could have taken extra steps to attempt to acquire more evidentiary support for the motion for a mistrial. (ECF No. 349 at 27.) But the Court ultimately found that Hernandez did not demonstrate that the failure to take these extra steps resulted in his counsel's performance falling below an objective standard of reasonableness. (*Id.* at 27–28.) This finding was based on two jurors' answers to the trial court's questions, which confirmed that they did not discuss the case either before or during their shopping trip for the gift. (*Id.* at 28.) Therefore, the Court reasoned that "Hernandez's trial counsel could have reasonably determined that the jurors' buying of the gift did not warrant a mistrial, negating a futile further investigation into the issue." (*Id.*) Hernandez appears to interpret this reasoning as stating that he did not move for a mistrial. (ECF No. 351 at 21 ("However, counsel did move for a mistrial.").) This interpretation is mistaken. As discussed in the Merits Order, the bailiff informed the trial court during deliberations about the issue of the gift. (ECF No. 349 at 26.) The trial court indicated that it desired to question the jurors who bought the gift, and Hernandez's counsel stated that he would be moving for a mistrial depending upon that questioning. (*Id.*) The Merits Order merely states Hernandez's trial counsel could have reassessed the viability of the motion and thus the need to investigate further—not that it did not make the motion.

Hernandez then argues that the Court committed manifest error of fact and law in attributing strategic considerations to counsel that were explicitly belied by the record. (ECF No. 351 at 23.) The Court acknowledges that it "may not indulge 'post hoc rationalization' for counsel's decision-making that contradicts the available evidence of

counsel's actions[.]" *Harrington v. Richter*, 562 U.S. 86, 109 (2011). However, the Court's finding that Hernandez's trial counsel could have made a strategic decision not to investigate further is not contradicted by the available evidence. As was discussed further in ground 3, the discussion, purchase, and giving of the gift was a result of the jurors' sympathy for A.H. (ECF No. 349 at 36-37.) A few jurors' mutual sympathy for Hernandez's young child does not necessarily correlate to a prejudicial impact against Hernandez. *See Valdez v. State*, 196 P.3d 465, 475 (Nev. 2008) (explaining that to support a mistrial based on jury misconduct, "[t]he defendant must prove the nature of the jury misconduct *and* that there is a reasonable possibility that the misconduct affected the verdict" (emphasis added).) Thus, even if Hernandez's trial counsel could have further questioned the jurors about their misconduct, this lack of correlation means Hernandez's trial counsel's motion for a mistrial on this ground was bound to fail. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious."). If the motion for a mistrial was unmeritorious regardless of what further questioning could have been sought—for example, as contended by Hernandez, examining the two jurors out of each other's presence, placing the two jurors under oath, asking about whether the gift was discussed with the other jurors, or asking if the other jurors saw the gift—then Hernandez fails to demonstrate the deficiency of his trial counsel in litigating that motion.

Moving to ground 3, Hernandez alleged that the jury's misconduct in buying the gift resulted in the jury deciding his sentence based on improper bias. (ECF No. 221 at 100–04.) Hernandez argues that the Court's denial of relief on ground 3 was based on irreconcilable and erroneous factual findings. (ECF No. 351 at 24.) Specifically, Hernandez argues that the following findings by this Court were contradictory: (1) the jurors' discussion of their mutual sympathies for A.H. did not necessarily entail

discussions of the basis of their sympathy or any other facts surrounding the case, and (2) sympathies for the victim's daughter was a natural response. (*Id*. at 25.) The Court fails to see how these findings were contradictory. Instead, these findings are complementary: having feelings of sympathy for a child victim would come naturally to a juror after hearing about the hardship that child was facing, resulting in several jurors discussing their desire to get that child a condolence gift.

Hernandez also argues the Court misapprehended his prejudice argument, explaining that it was not based on the jurors' sympathy for A.H. but rather on the fact that jurors began discussing their sympathies in the middle of the penalty phase and before defense counsel had presented any mitigation evidence. (ECF No. 351 at 26.) While the Court did not specifically discuss the timing of the gift in relation to its prejudice analysis, the Court broadly found that no prejudice resulted from the gift.

### C.   Denial of ground 4

In ground 4, Hernandez alleged that his counsel failed to ensure that the jury was composed of an ethnic and racial cross-section of the community. (ECF No. 221 at 108.) In denying relief on this portion of ground 4, the Court explained that "Hernandez is faced with the arduous task of supporting his prejudice argument—that the jury pool and venire were not fairly drawn—with a lack of evidence which is the result of the deficiency with which he alleges here—his counsels' failures regarding the jury pool and venire." (ECF No. 349 at 42.). The Court then explained that "[t]his circular argument results in Hernandez failing to factually support this ground" because "the Court would need significant additional information to be able to determine whether Hernandez's counsel acted deficiently in not challenging the venire." (*Id*.) Nonetheless, noting that "Hernandez's counsel was the reason behind this lack of additional information," the Court found that it would be "inequitable that those failures will forever hinder Hernandez from litigating this type of claim," so it also found this ground to be substantial for procedural

default purposes. However, "because there [was] nothing in the record to show that Hernandez's counsel should have taken any sort of action in response to the jury pool and venire," the Court ultimately denied this portion of ground 4, finding that Hernandez "fail[ed] to meet his burden of demonstrating ineffectiveness under *Strickland*." (*Id*.) Notably, the Court granted a Certificate of Appealability for ground 4, explaining that "reasonable jurists could debate the fairness of denying relief on a petitioner's ineffective-assistance-of-counsel claim on the sole basis of said counsels' failure to develop factual support for the claim, especially in light of the Court's prohibition on conducting an evidentiary hearing under *Ramirez*." (*Id*. at 129–130.)

Relatedly, in discussing Hernandez's motion for discovery, the Court stated that it "is prohibited from considering newly developed evidence" under *Ramirez*, meaning "it would be an errand in futility to discover information [related to ground 4] that the Court [was] prohibited from considering." (*Id*. at 123–24.) In discussing Hernandez's motion for evidentiary hearing, the Court stated that "[u]nder *Ramirez*, the failure to develop the factual basis of [ground 4] is due to the negligence of Hernandez or his first state postconviction counsel," meaning "the requirements of § 2254(e)(2) are triggered." (*Id*. at 127.) The Court then found that "Hernandez fail[ed] to demonstrate that he has met these requirements." (*Id*.)

Hernandez argues the Court committed manifest errors of law and fact when it rejected ground 4 for lack of evidence while simultaneously denying his request for discovery and an evidentiary hearing. (ECF No. 351 at 28.) Hernandez explains that the state court precluded him from developing evidence in support of his ineffective assistance claim during his initial state postconviction proceedings, meaning he was not at fault for the deficiency of the state court record and the limitations of § 2254(e)(2) do not apply.[4] (*Id*. at 29–30.)

---

[4]Hernandez also argues that the state court presiding over his second state postconviction proceedings barred him from developing any record at all. (ECF No. 351

In his initial *pro se* state postconviction petition, Hernandez's relevant argument in its entirety is as follows: his trial counsel failed to file a "motion challenging the racial composition of the jury venire." (ECF No. 117-5 at 8.) Hernandez was appointed counsel, and his postconviction counsel filed a supplemental petition which incorporated Hernandez's *pro se* petition. (ECF No. 260-19 at 4.) Notably, Hernandez's counseled supplemental petition did not elaborate on the relevant claim. The state court "ordered that an evidentiary hearing would be held addressing" Hernandez's trial counsel "failing to file a motion to change venue or a motion to suppress statements, failing to present Dr. Kinsora to the jury, [and] conceding that Defendant was involved in the killing." (ECF No. 1-2 at 47.) Later, in his opening brief on his appeal of the denial of his first state habeas action, Hernandez argued to the Nevada Supreme Court that his trial counsel never filed a "motion challenging the racial composition of the jury venire." (ECF No. 17 at 36.)

Section 2254(e)(2) applies when "there is lack of diligence . . . attributable to the prisoner." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). A finding of diligence "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id*. at 435. A prisoner "is not at fault" for purposes of § 2254(e)(2) "when his diligent efforts to perform an act are thwarted . . . by the conduct of another or by happenstance." *Id*. at 432. When "[a]n indigent prisoner . . . is denied counsel and discovery[, he] has no practical likelihood of" investigating his post-conviction claims in state court. *Rodney v. Garrett*, 116 F.4th 947, 957 (9th Cir. 2024). In that situation, a petitioner has done "all that he could to develop the evidentiary bases of his . . . claims in state court," so he cannot be found to have "fail[ed] to develop the state-court record within the meaning of § 2254(e)(2)." *Id*.

---

at 29–30.) As was discussed earlier in this Order, the second state postconviction court did not bar development of the record; rather, Hernandez failed to comply with state procedural rules in filing his second postconviction petition.

Here, Hernandez was appointed postconviction counsel, meaning his postconviction counsel could have investigated whether the jury was composed of an ethnic and racial cross-section of the community. It is true that the state court limited the postconviction evidentiary hearing to non-related issues; however, this did not prevent Hernandez's postconviction counsel from conducting discovery on this issue. Indeed, Hernandez's postconviction counsel merely incorporated the relevant claim from Hernandez's *pro se* petition into the supplemental petition without conducting any investigation, including legal support for the claim, or adding relevant details. As such, Hernandez fails to support his argument that he diligently pursued development of the state-court record but was thwarted by the state court from doing so. Instead, Hernandez's postconviction counsel was the basis for this claim not being developed. Thus, this Court properly concluded that *Ramirez* prevents Hernandez from presenting new evidence now, so discovery and an evidentiary hearing are unwarranted.

Hernandez also argues that the Court erroneously concluded that this portion of ground 4 was procedurally defaulted. (ECF No. 351 at 30.) In ruling on Respondents' motion to dismiss, the Court found that to the extent this portion of ground 4 was "more detailed than . . . asserted on the appeal in Hernandez's first state habeas action, Hernandez might be able to overcome the procedural default by showing inadequate assistance of counsel in his first state habeas action." (ECF No. 184 at 23.) Then, in its Merits Order, the Court stated that "[b]ecause Hernandez's argument here is broader and more detailed than the argument he presented to the Nevada Supreme Court, this portion of ground 4 is procedurally defaulted." (ECF No. 349 at 41.)

Even if the Court reconsidered its finding that this portion of ground 4 is procedurally defaulted, which it does not, it would have to defer to the Nevada Supreme Court's holding that "Hernandez has not provided adequate facts or argument establishing that his counsel were deficient or, assuming any deficiency, that he was

prejudiced by counsel's omissions." (ECF No. 14-2 at 73.) Hernandez argues that the Nevada Supreme Court's rejection of this claim was based on an unreasonable determination of the facts, entitling him to *de novo* review. (ECF No. 351 at 30.) Hernandez's argument in this regard is based on the state court confining the scope of the evidentiary hearing, precluding him from developing evidence in support of this claim. However, as the Court already discussed, the state court did not preclude Hernandez from developing evidence in support of this claim by limiting the scope of the evidentiary hearing. Instead, Hernandez's postconviction counsel was the basis for this claim not being developed.

### D. Denial of ground 29

In ground 29, Hernandez alleged that his death sentence is invalid under the federal constitutional guarantees of due process, equal protection, a reliable sentence, and a jury trial because the Nevada Supreme Court, on collateral review, struck an aggravating circumstance and proceeded to reweigh the two remaining aggravators against the seven mitigators that the jury found during the penalty phase. (ECF No. 221 at 230.) In its Merits Order, this Court explained that "[t]he Nevada Supreme Court treaded closely to crossing the line between reweighing and making factual findings, including, for example, stating that the murder took place 'in clear view' of A.H., which was never definitively proven at the trial." (ECF No. 349 at 115.) This Court also explained that "the Nevada Supreme Court's finding that it was convinced *beyond a reasonable doubt* that, after striking one of three aggravating circumstances and reweighing those remaining two aggravating circumstances against the seven mitigating circumstances, the jury would have found Hernandez death eligible is debatable." (*Id*. (emphasis in original).) However, the Court determined that Hernandez was not entitled to federal habeas relief because he "fail[ed] to demonstrate that the Nevada Supreme Court's reweighing amounted to an unreasonable determination of the facts given that it appears to have fully considered the

mitigating circumstances presented by Hernandez and the remaining aggravating circumstances in its analysis." (*Id*.)

The Court did, however, grant a Certificate of Appealability for this ground, stating that (1) "reasonable jurists could debate whether the Nevada Supreme Court made factual findings when, after striking an aggravating circumstance, it reweighed the remaining aggravating circumstances with the mitigating circumstances," and (2) "the reasonable jurists could debate whether the Nevada Supreme Court's reweighing amounted to an unreasonable determination of the facts given that it discussed Hernandez's mitigating circumstances in cursory fashion while prioritizing its discussion on the 'brutal,' 'vicious,' 'reprehensible,' and 'cruel' details in aggravation." (*Id*. at 130.)

Hernandez argues that this Court's conclusion that he could not overcome AEDPA deference while simultaneously acknowledging the Nevada Supreme Court had engaged in improper fact finding amounted to a manifest error of fact and law. (ECF No. 351 at 32.) This Court did not state that the Nevada Supreme Court engaged in improper fact finding. Rather, as indicated above, it stated that "[t]he Nevada Supreme Court treaded closely to crossing the line [of] making factual findings." (ECF No. 349 at 115.) This statement is not contradictory, as Hernandez appears to claim, to its subsequent example: the Nevada Supreme Court "stat[ed] that the murder took place 'in clear view' of A.H., which was never *definitively* proven at the trial." (*Id*. (emphasis added).) Rather, there was evidence presented at trial that A.H. at least observed the aftermath of the murder. Thus, interpreting the Nevada Supreme Court's statement that the "attack on Donna [took place] in clear view" of A.H. in broader terms (*i.e.*, that she was present in some capacity) rather than in more specific terms (*i.e.*, that she specifically saw her mother being murdered) negates Hernandez's contention that the Nevada Supreme Court "construe[d] conjecture as fact."  (ECF No. 351 at 27.)

///

### E. *Loper Bright Enterprises*

Hernandez argues that the recent United States Supreme Court decision *Loper Bright Enterprises v. Raimondo* demonstrates that this Court should apply a less restrictive form of AEDPA deference. (ECF No. 351 at 28 (citing 603 U.S. 369 (2024)).) In *Loper Bright*, the Supreme Court overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), dealing with the deference owed to agency interpretations of ambiguous statutes. 603 U.S. at 378–79. Hernandez argues that because *Loper Bright* recognized that federal courts may not abdicate their role in deciding questions of federal law, this Court should not be required to defer to the Nevada state courts on federal constitutional issues under AEDPA but rather should be able to exercise independent judgment when deciding legal questions. (ECF No. 351 at 38.)

While this Court may prefer to exercise its independent judgment on questions of federal constitutional law, this Court is bound to follow controlling United States Supreme Court precedent until it has been explicitly overruled by that Court. *See United States v. Werle*, 35 4th 1195, 1201 (9th Cir. 2022) (quoting *Nunez-Reyes v. Holder*, 646 F.3d 684, 693 (9th Cir. 2011) (*en banc*)). In *Loper Bright*, the Supreme Court did not explicitly (or implicitly) overrule or dilute AEDPA deference—or even discuss AEDPA at all. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) ("If a precedent of this Court has direct application in a case, . . . a lower court should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decision. This is true even if the lower court thinks the precedent is in tension with some other line of decisions." (internal quotation marks and citation omitted)). And the Supreme Court recently confirmed AEDPA's constitutionality. *See Brown v. Davenport*, 596 U.S. 118, 127 (2022) ("When Congress supplies a constitutionally valid rule of decision, federal courts must follow it. In AEDPA, Congress announced such a rule."). Accordingly, this Court rejects

1  Hernandez's request for this Court to apply a less restrictive form of deference to his Fifth-
2  Amended Petition.

## IV.  CONCLUSION

It is therefore ordered that the Motion (ECF No. 351) is denied. To the extent that it is required, the Court denies a Certificate of Appealability because reasonable jurists would not find this Court's denial of the Motion to be debatable or wrong.

It is further kindly ordered that the Clerk of the Court reclose this action.

DATED THIS 5th Day of January 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE